IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, *As Trustee Under Securitization Servicing Agreement Dated as Of July 1, 2005 Structured Asset Securities Corporation, Structured Asset Investment Loan Trust Mortgages Passthrough Certificates, Series 2005-He1*, <br><br> Plaintiff, <br><br> v. <br><br> **ARTURO A. MONDRAGON and CELIA MONDRAGON,** <br><br> Defendants. | Civil Action No. **3:18-CV-3126-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Attorneys' Fees ("Motion") (Doc. 39), filed June 22, 2023. Defendants have not filed a response to Plaintiff's Motion, and the deadline to do so has expired. Having considered the Motion, record, and relevant law, the court **grants,** to the extent herein set forth, Plaintiff's Motion.

**I.     Background**

On November 27, 2018, Plaintiff filed its Original Complaint ("Complaint") (Doc. 1) in this action against Defendants Arturo A. Mondragon and Celia Mondragon (collectively, "Defendants"), seeking a judgment and foreclosure pursuant to the Deed of Trust's power-of-sale provision and the Texas Property Code or, alternatively, by judicial foreclosure. On April 17, 2019, the court ordered Plaintiff to move for entry of default no later than May 2, 2019. Doc. 7. Instead, however, Plaintiff filed a Motion to Abate stating that "Defendants have accepted a Trial Period Modification Plan ("Trial Period Plan");" therefore, "Plaintiff is prohibited from moving forward

with judgment in this action, under current CFPB regulations, until there is a confirmed default on the Trial Period Plan. *See* 12 CFR §1024.41(g)." Doc. 8 at 2.

On May 2, 2019, the court granted Plaintiff's Motion to Abate, but instead of abating the case, it administratively closed it. Doc. 9. On November 22, 2019, Plaintiff filed a Motion to Reinstate and Entry of a New Scheduling Order (Doc. 10), stating that "Defendants were not successful in completing the Trial Period Plan, and the loss of mitigation hold has been removed on their loan." The court granted the motion and reopened the case on December 18, 2019. Doc. 11. On January 8, 2020, Plaintiff filed a Request for Clerk to issue Clerk's Entry of Default (Doc. 12) and a Motion for Default Judgment (Doc. 13). The clerk of court filed the Clerk's Entry of Default (Doc. 14) the next day. On July 1, 2020, the court denied Plaintiff's Motion for Default holding that Plaintiff "failed to specifically allege it has the requisite authority to foreclose on the property or that service was completed through any of the required methods." Doc. 15.

On July 31, 2020, Plaintiff filed its *second* Motion for Default (Doc. 17). Before the court could rule on this motion, however, Plaintiff filed a *second* Motion to Abate Action stating that Plaintiff's counsel "has been recently informed that Defendants are being considered for a loan modification trial payment plan." Doc. 18 at 2. Accordingly, the court granted Plaintiff's *second* Motion to Abate Action and administratively closed the case. Doc. 19. On December 22, 2020, Plaintiff filed a Motion to Reopen Case because "[t]he parties were unable to successfully finalize a loan modification." Doc. 21. On June 15, 2021, the court granted Plaintiff's motion, reopened the case, and directed the clerk of court "to amend the docket sheet to show that Plaintiff's s*econd* Motion for Default is pending with an adjusted file date of June 16, 2021." Doc. 22. On December 8, 2021, the court granted Plaintiff's *second* Motion for Default (Doc. 24) and entered a Default Judgment (Doc. 25). On December 16, 2021, however, Plaintiff filed a Motion to Vacate Default

**Memorandum Opinion and Order – Page 2**

Judgment against Defendants (Doc. 26) stating that: "counsel for Plaintiff was recently advised that when the Final Judgment was entered, the subject loan was placed on hold due to active loss mitigation. The Defendants were approved for a new trial plan payment and the first payment has been received." Doc. 26 at 2-3.

On December 21, 2021, the court granted Plaintiff's Motion to Vacate; vacated its Memorandum Opinion and Order granting Plaintiff's *second* Motion to Dismiss and Default Judgment; and administratively closed the case. Doc. 27. On February 17, 2022, Plaintiff filed a Motion to Reinstate Case because "[i]t has been determined that Defendants were not successful in completing the Trial Period Plan, and the loss mitigation hold has been removed on their loan." Doc. 28 at 2. On February 25, 2022, the court granted Plaintiff's motion and reopened the case. On March 9, 2022, Plaintiff filed a *third* Motion for Default Judgment. Doc. 30. On March 16, 2022, however, Plaintiff filed a *third* Motion to Abate Action because Plaintiff's counsel was "informed that on March 9, 2022, Defendant Arturo A. Mondragon was approved for a trial plan payment starting with a first payment due on April 1, 2022. The last payment under the trial period would be due on June 1, 2022." Doc. 31 at 3. The next day, the court granted Plaintiff's *third* Motion to Abate, denied as moot Plaintiff's *third* Motion for Default, and administratively closed the case. Doc. 32.

On August 19, 2022, Plaintiff filed a Motion to Reinstate Case because Defendant Arturo A. Mondragon "failed to comply with the scheduled trial plan payments." Doc. 33 at 3. On October 4, 2022, the court granted Plaintiff's motion and reopened the case. On October 5, 2022, Plaintiff filed its *fourth* Motion for Default Judgment. On June 14, 2023, the court granted Plaintiff's *fourth* Motion for Default Judgment. Doc. 37. As to Plaintiff's request for attorney's fees, the court stated:

> The court will consider any request for attorney's fees postjudgment in accordance with Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54.1. In

**Memorandum Opinion and Order – Page 3**

>   making any request for attorney's fees, Plaintiff must set forth the bases (factually
>   and legally) for its entitlement to such legal fees. This includes the authority on
>   which Plaintiff relies as well as evidentiary bases for its entitlement to such fees. A
>   response and reply may be filed in accordance with Local Civil Rule 7.1.

*Id.* at 8. Plaintiff filed its Motion on June 22, 2023, requesting $13,354.24 in "reasonable and necessary attorney's fees [and costs] . . . that it has incurred in enforcing its interest in the subject property" in this action. Doc. 39 at 2. Defendants failed to file a response. The Motion is therefore ripe for consideration.

## II.     Discussion

### A.     Overview

Rule 54(d)(2), "Attorney's Fees," of the Federal Rule of Civil Procedure states:

(A) *Claim by Motion*. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

>   (i) be filed no later than 14 days after the entry of judgment;
>
>   (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
>   (iii) state the amount sought or provide a fair estimate of it; and
>
>   (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. Proc. 54(d)(2). Here, Plaintiff's Motion meets the requirements of Rule 54(d)(2) and complies with the Northern District of Texas's Local Rule 7.1. Further, Plaintiff seeks attorney's fees and court costs pursuant to[1] the Deed of Trust that states:

---

[1] Plaintiff also seeks attorney's fees and court costs pursuant to Section 38.001(8) of the Texas Civil Practice, which states that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Plaintiff did not sue Defendants

**Memorandum Opinion and Order – Page 4**

> If [ ] Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including . . . paying reasonable attorneys' fees to protect its interest in the Property . . . . Any amounts disbursed by Lender . . . shall become additional debt of Borrower secured by this Security Instrument.

Doc 35-1 at 19 (Deed of Trust ¶ 9). Given that the Deed of Trust establishes the availability of attorney's fees as a remedy, the court determines that Plaintiff is entitled to its attorney's fees.

### B.   Motion for Default and Motion to Vacate

In its Motion, Plaintiff asks for all attorney's fees it incurred since the outset of this action. For the reasons stated below, Defendants should not be held accountable for all the fees because of Plaintiff and its counsels' actions, and an adjustment to the fee request is warranted.

First, the court denied without prejudice Plaintiff's *first* Motion for Default because Plaintiff "failed to specifically allege it has the requisite authority to foreclose on the property or that service was completed through any of the required methods." Doc. 15. This information should have been addressed. Defendants should not be held accountable for Plaintiff's failure, and an adjustment to the fee request is warranted. Based on the court's calculations, Plaintiff's counsel charged $520.50 for drafting the *first* Motion for Default. Accordingly, $520.50 will be subtracted from the total fees awarded.

Second, while Plaintiff's *second* Motion for Default was pending, Plaintiff and Defendants entered another payment plan. Plaintiff, however, failed to timely advise the court of this payment plan. As a result, the court granted the Motion for Default and entered a Default Judgment when "the subject loan was placed on hold due to active loss mitigation." Doc. 26 at 1. Therefore, due to Plaintiff's lack of diligence in informing the court, it was forced to file a Motion to Vacate and

---

for breach of contract. The court, however, does not need to analyze the applicability of section 38.001 because Plaintiff is entitled to attorney's fees pursuant to the Deed of Trust.

incur additional attorney's fees. Defendants should not be held accountable for Plaintiff's lack of diligence, so an adjustment to the fees is warranted. Based on the court's calculations, Plaintiff's attorneys charged $590.50 for drafting the Motion to Vacate. Accordingly, $590.50 will be subtracted from the total attorney's fees awarded.

### C. Billing Judgment

Billing judgment is the "usual practice of law firms [to] writ[e][off] unproductive, excessive or redundant hours." *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). A party submitting a fee request is "required to exercise billing judgment." *Id.* (citation omitted). The party requesting fees is "charged with the burden of showing the reasonableness of the hours [it] bill[s] and, accordingly, [is] charged with proving that [it] exercised billing judgment." *Id.* at 700 (citing *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987)). Normally, this is reflected in the affidavit or declaration of counsel for the prevailing party.

Here, no evidence in the record indicates that Plaintiff's counsel wrote off any excessive, redundant, or unproductive hours. For example, Plaintiff's counsel charged almost a thousand dollars for drafting the *third* Motion for Default. The court, however, granted Plaintiff's *second* Motion for Default. Therefore, in drafting the *third* Motion for Default, Plaintiff's counsel should have only needed to make minor changes to the previously granted *second* Motion for Default. These minor changes should not have amounted to several hours of work, yet the invoices reflect that Plaintiff's attorneys billed several hours to draft and review the *third* (and *fourth*) Motion for Default. Accordingly, because Plaintiff submits no evidence that establishes, or even intimates, that it exercised billing judgment, a reduction of the fee request is in order. *See id.* at 770. After a thorough review of the record, the court believes that a 15% reduction of the fees requested is

appropriate in this case. *See Walker*, 99 F.3d at 774 (finding that a 15% reduction was reasonable for failing to exercise billing judgment).

      **D.**      **The Fee Award**

Courts may award fees that are "reasonable and necessary" to the prosecution of a claim or suit. *Stewart*, 822 S.W.2d at 10. The court now addresses the reasonableness of Plaintiff's fee request. In assessing the reasonableness of attorney's fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The Texas Supreme Court has set out the following factors that should be considered by the factfinder in determining the reasonableness and necessity of attorney's fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citations omitted). These factors are not mandatory. As the court in *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.), aptly observed:

> While these are factors that may be considered, the court is not required to receive evidence on each of those factors. The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties.

*Id*. (citation omitted).

First, the court determines that the hourly rates charged by Plaintiff's counsel are reasonable. The court makes this determination based upon the declaration of Mr. Cronenwett, the record, its experience in setting fees in similar cases, and its knowledge of rates charged in the Dallas legal community for legal services rendered by attorneys with the level of skill, ability, competence, and experience of Plaintiff's counsel. The hourly rates charged by Plaintiff's counsel are consistent with those rates charged by attorneys of comparable abilities, competence, experience, and skill in the Dallas legal community as those of Plaintiff's counsel. The court, after reviewing the record, makes the same conclusion regarding the hourly rates for services rendered by paralegals on behalf of Plaintiff. In reality, the rates charged by Plaintiff's attorneys and paralegals are at the low end of what is charged in the Dallas legal community.

Second, the court has considered the law as set forth in earlier cited authority and, for the reasons set forth in section II (B) and (C), determines that adjustments should be made to the amount of fees requested by Plaintiff. Specifically, with respect to the *first* Motion for Default and Motion to Vacate, the court determined that $520.50 and $590.50, respectively, should be subtracted from the total amount awarded; and, with respect to the failure to exercise billing judgment, the court determined a 15% reduction is appropriate. Therefore, the total amount of fees requested, $12,733.00, is reduced by $1,141.00 and then by 15%, equaling $9,853.20. Further, the court, based on the record, determines that the requested amount of $621.24 for costs is reasonable.

Accordingly, the court will award a total amount of $10,474.44 in attorney's fees and costs to Plaintiff for legal services performed in pursuing this action.

Finally, the court considers Plaintiff's request for attorney's fees if this action is appealed to the Fifth Circuit and United States Supreme Court. At this time, however, Defendants have not pursued an appeal. Therefore, prospectively awarding attorney's fees and costs would be based on conjecture and speculation. Accordingly, the court **declines** to consider this request.

### III.  Conclusion

For the reasons stated, the court **grants** Plaintiff's Motion as herein set forth. Accordingly, Plaintiff is awarded and shall recover against Defendants, jointly and severally, the amount of $10,474.44 as attorney's fees and costs. As this is an order relating to an award of attorney's fees, no entry of a judgment is necessary. Fed. R. Civ. P. 58(a)(3).

**It is so ordered** this 12th day of February, 2024.

Sam A. Lindsay
United States District Judge